Robert LANE, Plaintiff,

v.

**TERMINAL FREIGHT HANDLING CO., d/b/a Sears Logistics Services, Defendant.**

No. C–2–90–788.

United States District Court, S.D. Ohio, E.D.

Jan. 22, 1991.

Michael Philip Vasko, Strip, Fargo, Schulman & Hopper, Columbus, Ohio, for plaintiff.

Steven Walter Tigges, Squire, Sanders & Dempsey, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

The plaintiff, Robert Lane, filed this wrongful termination action on September 25, 1990, in the Franklin County Court of Common Pleas. On October 22, 1990, the defendant, Terminal Freight Handling Co., a subsidiary of Sears, Roebuck, removed the action to this Court based on the parties' diverse citizenship.

Terminal Freight moved for summary judgment on November 16, 1990 and for a protective order on November 20, 1990. Lane responded with a memorandum contra the motion for summary judgment on December 5, 1990 and a memorandum contra the protective order December 13, 1990. Terminal Freight filed its reply on December 17, 1990, and both motions are now ripe for decision.

### I.

Fed.R.Civ.P. 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The purpose of

the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *accord, County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 743, n. 11 [103 S.Ct. 2161, 2170, n. 11, 76 L.Ed.2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord, Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.1984), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. at 1608–10; *Smith v. Hudson,* 600 F.2d 60, 65 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonable find for the opposing party. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12. As is provided in Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 1577–78, 20 L.Ed.2d 569 (1968) (footnote omitted).

## II.

Applying the above standards, and construing the facts most favorably to the plaintiff, the relevant facts are as follows. Robert Lane was hired by Terminal Freight in early 1985 as a dock worker. He apparently worked satisfactorily until August, 1990. Around August 6, 1990, Terminal Freight informed its dock workers that it was imposing an additional two hours of mandatory overtime at the end of each shift. On August 10, 1990, for unknown reasons, Lane told his supervisor that he would not work the overtime that evening.

Lane was under the impression that failure to work the mandatory overtime would result in an "occurrence" being entered on his personnel records. An "occurrence" is part of a four-step disciplinary system employed by Terminal Freight. Relying on both his understanding of Terminal Freight's internal procedures and representations of his supervisor, he left work without completing the mandatory overtime. In fact, no "occurrence" was entered. Rather, Terminal Freight chose to consider Lane's leaving work without permission as a resignation. Lane apparently objected to this characterization, and Terminal Freight changed his status to terminated.

Lane originally applied for a job with Terminal Freight on January 2, 1985. The following language appears immediately above his signature on the application form:

In consideration of my employment, I agree to conform to the rules and regulations of Terminal Freight Handling Co. and my employment and compensation can be terminated with or without notice, at any time, at the option of either the Company or myself. I understand that no unit manager or representative of Terminal Freight Handling Co. other than the President or Vice–President of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

On January 26, 1985, the week before he began work, he completed a Personal Record Card. The language above his signature on that form reads:

In consideration of my employment, I agree to conform to the rules and regulations of Terminal Freight Handling Company and my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself.

It is the combined effect of these two provisions which is at issue here.

## III.

Lane does not deny that he signed the two forms described above. Additionally, he does not claim that the President or Vice–President of Terminal Freight made any changes in the rules of the Company, or made any representations to him. Rather, Lane argues that the language contained in the second document is controlling. Since the second document does not limit the authority of company representatives other than the president or vice president to make binding representations about the terms and conditions of employment, Lane claims he was entitled reasonably to rely on the policies in the employee handbook and on the representations of his supervisors. Taken together, those materials led Lane to believe, he contends, that he would not be fired for refusing to work overtime on August 10, 1990.

Terminal Freight, on the other hand, argues that nothing in the second document operated to change the terms of the original application. Therefore, since neither the president nor vice-president made any agreement with or representation to Lane, he could have been discharged at any time for any reason. Thus, his discharge on August 10, 1990 simply is not actionable.

The effect of the employment at will language contained in the Sears, Roebuck employment application has been litigated numerous times. *See, e.g. Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir. 1986); *Novosel v. Sears, Roebuck & Co.*, 495 F.Supp. 344 (E.D.Mich.1980). As the *Reid* court noted, "Every reported district court case involving a claim of unlawful discharge in the face of the language contained in the Sears application has resulted in summary judgment for Sears." 790 F.2d at 461.

 Although an implied contract or promissory estoppel may take a case out of the employment at will doctrine, *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), this does not hold true where there is an unambiguous written contract to the contrary. *Bernard v. Rockwell International Corp.*, 869 F.2d 928 (6th Cir.1989). There is no doubt, and the plaintiff does not argue, that if the only writing involved here were the original application, it would control and create an employment at will contract with express limitations on the ability of company supervisors to make binding representations that would create specific exceptions to that relationship.

The relationship of the parties can best be viewed as initiated by the employment application. In that document, Lane in effect made Terminal Freight an offer, indicating that he was willing to become employed according to certain terms. Included in those terms were the express agreements that he would be an employee at will, and that the terms of the contract could only be altered by the president or vice-president of Sears. The subsequent completion of the Personal Record Card was not a new and different offer. Rather, it was a second part of the process of employment.

Since the Personal Record Card was merely a procedural step in the on-going process of hiring, it must be read in conjunction with the employment application. It does not contain any terms which are different from the terms of the application. Instead, it simply reiterates some of the provisions of the first form, without repeating all of them. The Card cannot be said to have modified any of the terms of Lane's employment simply by virtue of repeating some of them.

Reading the two forms together, it is clear that Lane was at all times subject to the terms of the written employment at will contract embodied in the employment application. The representations he claims to rely on in were made by his supervisors and policy statements in the employee handbook. The terms of his contract expressly provide that he is not to rely on these representations. Since he remained at all times an employee at will, and no binding representations to alter that relationship are alleged, he cannot be said to have been wrongfully terminated.

### IV.

Terminal Freight's motion for a protective order is premised on the resolution of its motion for summary judgment. Since that motion has now been decided, the motion for a protective order is moot.

### V.

For the reasons set forth above, Terminal Freight's motion for a protective order is DISMISSED AS MOOT. Terminal Freight's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of the defendant.