**John A. DeSANZO, et al., Plaintiffs,**

**v.**

**TITANIUM METALS CORP.,
Defendant.**

**No.  C2–03–524.**

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 10, 2005.

Patrick Stanley Cassidy, Cassidy, Myers, Cogan, Voegelin & Tennant, L.C., Wheeling, WV, for Plaintiffs.

George Edward Yund, Jeffrey N. Lindemann, Frost Brown Todd LLC, Columbus, OH, for Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by Defendant, Titanium Metals Corp. ("Timet"). Plaintiffs, John A. DeSanzo, Kevin T. Rohal and Robert M. Valle, former supervisory employees at Timet, oppose the Motion. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000.[1] For the reasons that follow, Timet's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**

### I.

Timet operates a titanium processing and finishing facility in Toronto, Ohio. The company produces and supplies titanium primarily to the commercial airline industry as a raw material used in the manufacturing of airplanes. As a consequence of a depressed airline industry, resulting in large part from the terrorist attacks of September 11, 2001, Timet's production and sales of titanium decreased. Timet therefore determined that it would be necessary to engage in a reduction of its salaried workforce at all of its facilities. Robert Prystaloski, the Plant Manager, conducted the analysis to determine which of the employees would be terminated at Timet's Toronto facility.

Prystaloski reviewed the performance of the five manager-level employees who worked in the Operations department, including Plaintiff DeSanzo, Duane Faith, John Forsythe, Joe Knecht and Steve Tilmont. Prystaloski determined that DeSanzo inability to "get things done" in comparison to the other managers justified selecting him for termination as part of the reduction of the management force. As a result of DeSanzo's departure, the number of managers in the Operations department declined to four. Knecht kept his former projects and gained the Manager of Coil Products responsibilities formerly held by DeSanzo.

Prystaloski also determined that Plaintiff Rohal and Samuel Calabrese per-

---

1. Plaintiffs Rohal and Valle are citizens of Ohio and Plaintiff DeSanzo is a citizen of Pennsylvania. (Second Amend. Compl., ¶ 1; Answer ¶ 1.) Timet is a Delaware corporation with its principal place of business in Denver, Colorado. (Second Amend. Compl., ¶ 2; Answer ¶ 2.)

formed the same duties in the laboratory.[2] Prystaloski reviewed each employee's performance and determined that Rohal should be terminated. Mike Volas, Manager of Quality and Technology, agreed with this determination.

Prystaloski also identified Plaintiff Valle for termination as part of the reduction-in-force. At the time of his termination, Valle was one of twenty-nine front-line supervisory employees in the operations department. Eight of the twenty-nine supervisors in the operations department, including Valle, were terminated.

Prystaloski completed an initial analysis for the reduction-in-force and submitted the proposal to his supervisor, Jim Pieron, Vice President of North American Operations, who reviewed and approved it on August 23, 2002.

On August 27, 2002, Timet advised Plaintiffs, John A. DeSanzo, Kevin T. Rohal and Robert M. Valle, by letter that it was reducing its workforce and, as a result of a downturn in business, it was eliminating each of their positions. In addition to these three Plaintiffs, Timet selected nine other employees for the reduction-in-force for a total of twelve employees at the Toronto facility.

## A. Valle

Timet hired Valle on March 5, 1979. For over twenty years, he worked in a variety of hourly positions in which he was a member of the bargaining unit represented by the United Steelworkers of America and covered by a collective bargaining agreement which involved seniority rights in the event of a layoff. In April, 2001, Valle moved into a salaried supervisory position in the Forge Department. Timet sent Valle a letter confirming its

offer of employment for the position of Production Supervisor. The letter contained a provision that confirmed Valle's status as an at-will employee:

> This offer, if accepted, will create an employment-at-will relationship between you and TIMET. It is not intended nor should it be construed as a contract of continued employment.

The letter does not indicate that modifications to the terms of Valle's employment must be made in writing. Valle signed the letter, expressing his understanding of the terms of his employment as Production Supervisor and his assent to them. Valle testified that he understood that, as a supervisor, he could be terminated for any reason at any time.

In his new supervisory position, Valle reported to Jack Crites. Crites in turn reported to the Forge Department Manager, Mike McAllister, and then Steve Tilmont, after McAllister left the job as manager.

Valle alleges that McAllister led him to believe that he would eventually move up to replace Crites when Crites retired. According to Valle, the opportunity for advancement was the reason he took the job in the first place and made the decision to leave the bargaining unit after 23 years.

On or about July 15, 2002, Valle received a letter from the Union advising him that the collective bargaining agreement ("CBA") had been amended to provide that salaried employees who left a bargaining unit position would have only one year, instead of two years as provided in the previous CBA, to return to the bargaining unit without loss of their right to do so. The letter also advised Valle that current supervisory employees in that position, including Valle, would have a grace period

---

**2.** Although the employees in the Toronto facility laboratory did not report to Prystaloski, he was tasked with analyzing the staffing in that area.

until August 4, 2002 to decide if they wanted to return to the bargaining unit.

Before the August 4, 2002 deadline, Forge Manager Stephen Tilmont asked Valle what his plans were for the future with the company, since Jack Crites would be retiring. Timont asked Valle if he would be interested in Crites' job. Valle expressed his interest in Crites' job. Valle alleges that he took Tilmont's comments as a clear implication that he was the "man for the job" when Crites retired.

The fact that Timet was going to reduce its workforce was well known to its employees at the time Valle received the July 2002 letter from the Union. Valle attempted to determine whether he would be involved in the reduction before making his decision as to whether or not to return to the bargaining unit. Tilmont directed Valle to talk to either Plant Manager Prystaloski or Human Resource Director Gary Blosser. Prystaloski testified that he had been considering Valle for reduction as early as the end of July, 2002, but that he did not give Valle any indication of his thought processes because he knew that the final decision rested with upper management. Valle testified that he knew Timet told another supervisory employee, Jay Hutter, that it looked like Hutter would be reduced. Thus, Hutter exercised his option to return to the bargaining unit.

Valle then went to see Human Resource Director Gary Blosser. Valle and Blosser discussed the downsizing, and Valle's need to make a decision about returning to the Union before August 4, 2002. According to Valle, Blosser told him, "I wouldn't worry about it, you got a good—you got a good evaluation." (Valle Dep., Vol. II, at p. 20). Valle testified that Blosser did not expressly state that he would not be included in the downsizing, but contends that Blosser clearly implied as much. Valle made the decision to forgo his right to return to the bargaining unit. Valle received his letter from Timet advising him that he had been selected for termination on August 27, 2002.

## B. Rohal

Timet originally hired Rohal in November 1978 and, in 1994, promoted him to supervisor in the Quality Control Laboratory where he worked until his termination. At the time of his termination, both Rohal and Samuel Calabrese were supervisors in the Laboratory. Rohal reported to Larry Weller until Timet terminated Weller in July 2001. Rohal then reported to Greg Judy until Judy left Timet in July 2002.

Rohal asserts that Judy treated him poorly and made threats about causing Rohal's discharge. Judy asserts that he was unhappy with Rohal's performance, and had problems with Rohal's tardiness, excessive non-work related conversations with co-workers on company time and taking paid lunch hours. Rohal received a "needs improvement" rating during in his 2001 performance evaluation and did not receive a raise in April 2002. Calabrese received a performance rating of "Fully Proficient" in 2001.

Rohal's previous supervisor, Larry Weller, filed a lawsuit against Timet following his termination.[3] Rohal actively supported Weller and made favorable statements to Timet's attorney during an interview regarding Weller's case. Prystaloski, however, was not aware of the interview when he made the recommendation to select Rohal for the reduction-in-force. Approximately two months after Timet terminated Rohal, he executed an affidavit which was attached to Weller's memorandum in oppo-

---

**3.** *Weller v. Titanium Metals Corp.,* Case No. C2–02–290 (S.D.Ohio 2003)(Sargus, J.)

sition to Timet's motion for summary judgment.

Rohal is blind in one eye as a result of a childhood accident. He was able to perform his job as Laboratory Supervisor without any problems or accommodation. Rohal is able to drive, read, golf and take care of yard work. Prystaloski was not aware of Rohal's vision impairment.

## C. DeSanzo

DeSanzo was hired at Timet in January 2000 as Process Manager of the Forged Products Department. Prior to July 2001, DeSanzo became Manager of the Coil Department and supervised three supervisors and a production manager. DeSanzo held this position until his termination.

At the time of his termination, DeSanzo worked for Prystaloski. According to DeSanzo, Prystaloski was never critical of his work performance. In April 2001, DeSanzo received a performance based merit pay increase.

DeSanzo received a "needs improvement" score on his 2001 performance evaluation and did not receive a merit raise in April 2002. All of the other management employees in the Operations department received ratings of "fully proficient" or higher for 2001 and received their merit increases. DeSanzo also received a three-day disciplinary suspension in January 2002 for failing to notify Prystaloski that he would not be at work as scheduled.

DeSanzo's position with the company was terminated with the reduction-in-force. At the time of his termination, DeSanzo was 47 years old. Joe Knecth, the person who ultimately took over DeSanzo's functions as the Manager of the Coil Department, is 5½ months younger than De-Sanzo. Timet asserts that DeSanzo was terminated because the other managers at his level were performing better than DeSanzo. Timet retained Duane Faith and Brad Forsythe as managers in the Coil Department, who are substantially younger than DeSanzo. Faith and Forsythe shared some of DeSanzo's former duties for a brief period after his termination, but within the year, ultimately Knecth was reassigned as Manager of the Coil Department.[4]

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

4. Originally, DeSanzo alleged that Timet discriminated against him on the basis of disability. DeSanzo has expressly abandoned any claim related to disability discrimination. (Pls' Memo. in Opp., at p. 40.)

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995); *see also Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

## III.

### A.  Valle's Claims

Valle sets out three claims in this case including (1) promissory estoppel; (2) breach of implied contract; and (3) negligent misrepresentation. Timet contends that the Court need not consider Valle's claims because each is preempted by Section 301 of the Labor Management Rela-

tions Act ("Section 301"). Alternatively, Timet argues that Valle's claims fail as a matter of law.

### 1.  Preemption

■ Section 301 preempts state law claims that require an interpretation of a collective bargaining agreement ("CBA"). The Supreme Court has held that when resolution of a state law claim is substantially dependant upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be treated as a Section 301 claim or dismissed as preempted. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). To facilitate uniformity and predictability in interpreting the meaning of the terms of labor contracts, state law actions alleging violation of the contract's provisions must be brought under Section 301 and resolved by reference to federal law. *Lueck*, 471 U.S. at 210–11, 105 S.Ct. 1904.

Nevertheless, Section 301 does not preempt those substantive rights "independent" of the labor contract itself when those state-law rights may be determined without interpreting the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Therefore, Section 301 preempts only such state law claims that require interpretation of a CBA. *Id.* at 413, 108 S.Ct. 1877.

■ To determine whether a state cause of action is "independent" of a labor contract or is preempted under Section 301, the Sixth Circuit has developed a two-step method of analysis. *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994). The Court must first decide whether proof of the state law cause of action requires an interpretation of the terms of the CBA. *Id.* at 216 (citing *Terwilliger v. Greyhound*

*Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989)). Second, the Court must determine whether the right claimed by the plaintiff is created by the CBA, by state law, or by both. Unless the right arises solely from state law and does not require interpretation of the labor contract, the cause of action is preempted. *Id.* (citations omitted). Unless a plaintiff can satisfy both prongs of the test, Section 301 preemption will apply. *Id.*

■ Timet contends that Valle's claims require interpretation of the CBA between Timet and the Union that formerly represented Valle because, according to Timet, Valle is seeking to be put in the same position he would have been in but for the alleged wrongdoing by Timet. Timet maintains that in order to determine what position Valle would have been in—the remedy available for Valle's promissory estoppel and implied contract claims—the Court must interpret the collective bargaining agreement to the effect that Valle had two years, rather than one, to make a decision to return to the bargaining unit.

Valle filed a grievance with the Union after his reduction asserting that he should have had two years to decide to return to the collective bargaining unit instead of one. He asserted in his grievance that, when he took the management position, the CBA then in place provided for a two year window for exercising that right to return. The Union eventually dismissed the grievance.

Valle, however, is not litigating the dispute as to whether or not he had two years to return to the bargaining unit or any other aspect of his previous grievance. He does not dispute that he was required to make a decision by August 4, 2002. He claims instead that his timely decision to remain in management was the product of certain representations made to him which he now claims are actionable under Ohio

law. Valle essentially uses the fact that he did not return to the bargaining unit as evidence of the reliance element of his promissory estoppel claim. Moreover, he seeks monetary damages, and does not assert that the Court should construe the CBA so as to require that he be returned to the bargaining unit as part of his remedy. Because proof of Plaintiff Valle's state law causes of action for promissory estoppel, implied contract and misrepresentation do not require an interpretation of the terms of the CBA, the claims are not preempted by Section 301.

### 2. Promissory estoppel and breach of implied contract—at-will employee

Timet also contends that Valle's claims of promissory estoppel and breach of implied contract fail because he was an at-will employee. Timet notes that Valle's at-will employment relationship was confirmed and memorialized by a written offer of employment (the "Employment letter") and Valle acknowledged that he had no written contract of continued employment.

■ Generally, employment in Ohio is presumed to be at-will in the absence of facts or circumstances that indicate an agreement for a specific term. *Henkel v. Educational Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976). The employment-at-will doctrine recognizes the right of employers to discharge employees for any reason not contrary to law. *Id.*

In *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104, 483 N.E.2d 150 (Ohio 1985), however, the Supreme Court of Ohio recognized two exceptions to the employment-at-will doctrine. Employee handbooks, company policy and oral representations may give rise to implied or express contractual provisions that alter the terms of an oral at-will employment relationship. *Id.* An employer's right to discharge an

employee may also be limited by representations or promises made to the employee which fall within the doctrine of promissory estoppel. *Id.*

> [T]he doctrine of promissory estoppel is applicable and binding to employment-at-will relationships when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Kelly v. Georgia–Pacific Corp.*, 46 Ohio St.3d 134, 139 545 N.E.2d 1244, 1250 (Ohio 1989).

■ Timet argues that Valle's promissory estoppel claim fails because application of the doctrine is barred by the existence of a written at-will employment agreement. In particular, Timet notes that Valle signed the Employment Letter which contained a statement acknowledging that his employment status was "at-will." Although the promissory estoppel exception to the employment-at-will doctrine "is usually applied to circumstances involving oral employment contracts, it is an equally valid assertion when a written agreement is at issue." *Watkins v. Universal Chemicals & Coatings, Inc.*, Case No. 92AP–893, 1992 WL 344953 *3 (Ohio App., 10th Dist. Nov. 19, 1992) (unreported); *see also Nott v. Woodstock Care Center, Inc.*, Case. No. C–3–99–133 2001 WL 1135057 *12 (S.D.Ohio March 21, 2001)(Rice, C.J.)(unreported); *Blatnicky v. Sheller–Globe Corp.*, Case No. 56695, 1990 WL 66476 *4 (Ohio App. 8th Dist. May 17, 1990) (unreported)(reasoning that the doctrine of promissory estoppel "may be used to enforce an employer's oral assurances of job security, despite a written employment contract expressly terminable at will"); *State ex rel. Mintus v. Campbell*, Case No. 98–T–0112, 1999 WL 619551 *2–3 (Ohio App. 11th Dist. Aug. 13, 1999)(unreported)(holding the application of promissory estoppel to oral at-will employment agreements does not preclude its application to written employment contracts); *Uebelacker v. Cincom Systems, Inc.*, 48 Ohio App.3d 268, 549 N.E.2d 1210, 1216–1217 (Ohio App. 1st Dist.1988) (noting that the doctrine of promissory estoppel may be used to enforce an oral representations of job security, even though a written agreement exists that is terminable at will). Given this authority on the subject, the Court rejects Timet's assertion that Valle's promissory estoppel claim is barred by the presence of the written Employment Letter which contained an acknowledgment that his employment was at-will.[5]

■ Similarly, with respect to Valle's implied contract claim, "the 'at-will' concept is only a *description* of the parties'

---

5. In support of its argument, Timet cites *Baker v. Northwest Hauling*, 2003 WL 21489619 (Ohio App. 6th Dist. June 30, 2003), which held that "[w]hile an implied contract or promissory estoppel may provide an exception to the employment-at-will doctrine, *Mers, supra,* those exceptions will not apply where there is an unambiguous written contract to the contrary." The court in *Baker,* however, relied on *Lane v. Terminal Freight Handling Co.,* 775 F.Supp. 1101, 1105 (S.D.Ohio 1994)(Holschuh, J.). In *Lane,* the Court held that the plaintiff was an at-will employee based on statements on the job application form and a personal record card. The Court in *Lane* was not faced with the question of whether subsequent promises could alter the terms of those written expressions of an at-will employment relationship. *Lane* does not stand for the broad-sweeping proposition that a written contract will in all instances bar the application of a promissory estoppel claim.

prima facie employment relationship. It intimates nothing about subsidiary contractual arrangements (express or implied) to which an employer may legally obligate [itself] by adding to that relationship new terms and conditions." *Helle v. Landmark, Inc.,* 15 Ohio App.3d 1, 8, 472 N.E.2d 765, 773 (Ohio App. 6th Dist.1984). "When such oral or written modifications of the original employment contract satisfy the paradigm elements essential to contract formation—*i.e.,* offer, acceptance, consideration—binding obligations arise. Given this perspective, the present contractual analysis is ill-served by mechanical references to the employment-at-will doctrine." *Id.* Here, Valle's claim of implied contract presents issues of fact. Resolution of the issue of whether the at-will nature of Valle's employment was subsequently altered by an implied contract hinges upon an examination of the facts surrounding the employment relationship. A jury must decide whether that which took place between the parties constitutes promissory estoppel and/or an implied contractual modification of the at-will relationship. The question is one of intention, to be determined by the jury with reference to the facts and circumstances in the entire case, including the parties' previous relationship, what was said in Valle's various conversations with his supervisors and plant management, including McAllister, Tilmont, Blosser and Prystaloski.

Timet also contends that Valle's claims for promissory estoppel and breach of implied contract fail because no specific promise of job security was made to him. In order to maintain a claim for breach of contract or promissory estoppel, Valle must prove that a "specific promise of job security" was made to him. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.,* 178 F.3d 414, 424 (6th Cir.1999). Timet contends that it never gave Valle a specific promise of job security and never promised not to include him in the reduction-in-force, but instead, Valle merely inferred it from conversations he had with management.

The cases cited by Timet certainly suggest that an employer's mere promise to be fair during layoffs, *Skalka,* 178 F.3d at 424; discussions of career development, *Weiper v. W.A. Hill & Assoc.,* 104 Ohio App.3d 250, 257, 661 N.E.2d 796 (1995); or promises of future employment benefits, *Baker,* 2003 WL 21489619 at *3, will not support a promissory estoppel exception to the doctrine of employment at will. Valle, however, has adduced more than these types of generalized statements and has evidence sufficient to take the issue of a specific promise of continued employment to the jury. Valle testified that Blosser told him "not to worry" about the reduction-in-force; Valle was aware that another employee, Jay Hutter, exercised his option to return to the bargaining unit because Timet informed Hutter that he would likely be laid-off; Tilmont asked Valle if he would be interested in Jack Crites' job after Crites retired; and Prystaloski refused to tell Valle that he had targeted Valle for reduction when Valle questioned him. Based on these representations, Valle decided to forego his option of returning to the Union, where he would have been protected from the reduction-in-force.

The Court also concludes that summary judgment is inappropriate on the issues of whether Valle has proven reasonable and substantial detrimental reliance and whether Timet should have reasonably expected its representations to be relied upon by Valle. "The question of reasonableness is by nature an issue for the jury." *Tersigni v. General Tire. Inc.,* 91 Ohio App.3d 757, 762, 633 N.E.2d 1140,

1143 (1993)(citing *Kelly v. Georgia–Pacific Corp.*).[6]

For all of these reasons, Timet's Motion for Summary Judgment on Valle's claims of promissory estoppel, implied contract and negligent misrepresentation is **DENIED.**

### B. Rohal's Claims

Plaintiff Rohal asserts that Timet discharged him in retaliation for his participation in an age-based discrimination case involving another employee, Larry Weller, in violation of Ohio Revised Code § 4112.02(1). Alternatively, Rohal claims that his discharge violated the public policy against retaliating against an employee for giving truthful testimony in a legal proceeding or in anticipation of doing so. Rohal also claims that Timet discriminated against him on the based of his physical disability, *i.e.,* blindness in his left eye, in violation of Ohio Revised Code § 4112.02(A).

### 1. *Disability Discrimination*

Rohal brings his statutory discrimination action pursuant to Ohio Revised Code

§ 4112.02(A) makes it an unlawful discriminatory practice:

> For any employer, because of . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

■ In order to establish a claim for disability discrimination, Rohal must provide that (1) he was disabled; (2) Timet took adverse employment action against him at least in part because of his disability; and (3) although disabled, he could safely and substantially perform the essential functions of the job. *Hood v. Diamond Products,* 74 Ohio St.3d 298, 658 N.E.2d 738, Syl. ¶ 1 (Ohio 1996); *Hazlett v. Martin Chevrolet, Inc.,* 25 Ohio St.3d 279, 496 N.E.2d 478 (Ohio 1986) [7] Timet asserts that Rohal was not disabled; he is unable to adduce any evidence that he was terminated because of his alleged disability; that Timet had a legitimate nondiscriminatory basis for its decision to terminate him; and that Rohal has no evidence of pretext.[8]

---

6. Timet moved for summary judgment on Valle's misrepresentation claim on the sole basis that Valle's reliance on Blosser's alleged statements was not reasonable. Because the Court concludes that it will not determine that Valle's reliance was unreasonable as a matter of law, Timet's Motion for Summary Judgment on Valle's negligent misrepresentation claim is also **DENIED.**

7. Because Ohio's disability-discrimination law was modeled after the federal Americans with Disabilities Act, 42 U.S.C. § 12112(a) *et seq.* ("ADA"), courts may seek guidance when interpreting the Ohio handicap-discrimination statute from regulations and cases that interpret the ADA. *Columbus Civ. Serv. Comm. v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204 (Ohio 1998).

8. In his Amended Complaint, Rohal pleaded that he "suffered from a disability in that he was partially blind." (Amended Compl., ¶ 26.) In his Memorandum in Opposition, Rohal maintains that he was regarded as and had a record of disability. Timet objects to this assertion as an untimely attempt to amend his Complaint by changing his theory of disability discrimination, and argues that it must be allowed to conduct additional discovery and an opportunity to file another motion for summary judgment. The definition of "disability" in the Ohio Revised Code, however, indicates that a plaintiff may prove that he or she is in fact disabled by "being regarded as having a physical or mental impairment." Ohio Rev.Code § 4112.01(A)(13). Timet therefore is not entitled to additional discovery on this issue.

■ Rohal has been completely blind in his left eye since the age of five when his left pupil was struck by a dart. He tore his retina in his right eye in 1995 which left some tissue that floats and periodically disrupts his vision. The parties do not dispute that Plaintiff Rohal's eye condition is a physical impairment. Not all physical impairments, however, rise to the level of a disability. Only an impairment that limits a person's major life activities constitutes a disability. The Court's determination of whether an impairment substantially limits a person's major life activities is an individualized inquiry. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198–99, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). No impairment constitutes a disability *per se*. Plaintiff Rohal will be considered disabled only if he demonstrates that he (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. Ohio Rev. Code § 4112.01(A)(13). Rohal must have "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Williams*, 534 U.S. at 197, 122 S.Ct. 681.[9]

■ The material issue of whether Rohal was disabled in the sense of whether he was substantially limited in one or more life activity, remains in dispute.[10] Rohal submits evidence necessary to show that his impairment substantially limited a major life activity of seeing. He can only read documents when the floaters are out of the way and, every day, spent substantial time reading instructions or specifications with is head close to the desk. He cannot play certain sports, operate certain motor vehicles such as a motor cycle, and reading a newspaper strains his eyes too much. On the other hand, his visual impairments do not restrict him from performing many activities that are of central importance to most people's lives. For instance, he is able to work with accommodation, drive, read, golf every week, work in his yard and play with his daughter.

Rohal, however, cannot demonstrate that he was terminated because of his alleged disability. At the time Prystaloski terminated Rohal, he was not aware that Rohal was blind in one eye. Moreover, Rohal worked at Timet for 24 years with his eye condition. There is no evidence of record to indicate that Prystaloski or any other manager terminated him for any reason related to his eye condition.

Similarly, Rohal cannot demonstrate that Timet's proffered business reason for

9. Rohal argues that he has direct evidence of discrimination because some individuals made discriminatory remarks about his disability. He argues that the remarks were "made by one or more persons with final responsibility to terminate the wronged employee." (Mem. in Opp. at p. 35 citing *Byrnes v. LCI Comm. Holdings Co.*, 77 Ohio St.3d 125, 672 N.E.2d 145 (1996).) Rohal argues that Greg Judy is the wrongdoer here, but fails to attribute any negative remarks about his disability to him. Moreover, Rohal does not assert, and the record does not contain any information that Prystaloski, the decision-maker in this case, made any of the allegedly discriminatory remarks.

10. Rohal adduced much evidence that he was regarded as being disabled. Rohal testified that he discussed his condition with the majority of the supervisors he ever worked for at Timet. Moreover, Rohal adduced evidence that many employees teased him about running into walls; startled him from the side where he could not see; mocked the way Rohal would have to put his head down near the desk to see; and routinely asked him who he was looking at because of his unfocused stare in one eye.

his termination was a pretext for discrimination. Timet sets forth the legitimate nondiscriminatory reason of a reduction-in-force as the basis for Rohal's termination. To show pretext, Rohal must who "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Rohal cannot demonstrate pretext unless he proves both that the proffered reason was false and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," although such a showing might not "always be adequate to sustain a jury's finding of liability." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The ultimate question regarding liability depends on whether the protected trait actually motivated the employer's decision. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir.2003)(citing *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097).

■ Plaintiff may not prove pretext by attacking the soundness of an employment decision. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir.2000); *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir.1997). Rohal has not shown that Timet's proffered cost-savings justification for the reduction-in-force had no basis in fact, was not the actual reason motivating the decision to implement the reduction or that its reason was insufficient to justify the decision or was otherwise false.

For these reasons, Timet's Motion for Summary Judgment on Rohal's disability discrimination claim is **GRANTED.**

### 2. *Public Policy Claim*

■ In Count II of his Complaint, Rohal asserts a wrongful termination in violation of public policy as it relates to his alleged disability. Ohio law recognizes the tort of wrongful discharge in violation of public policy. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981, Syl. ¶ 2 (1990). This tort represents an exception to the at-will employment doctrine. *See Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, Syl. ¶ 1 (Ohio 1985)(noting employment relationship cannot be terminated for reason which is contrary to law).

■ A claim of wrongful discharge in violation of public policy, commonly referred to in Ohio cases as a *Greeley* claim, requires a prima facie showing of each of the following elements: (1) a clear public policy manifested in the Ohio or United States Constitutions, a statute or administrative regulation, or the common law (the "clarity element"); (2) that the dismissal of employees under similar circumstances would jeopardize the public policy (the "jeopardy element"); (3) that the discharge was motivated by conduct related to the public policy (the "causation element"), and (4) that the employer lacked a legitimate overriding business justification for the plaintiff's discharge (the "overriding justification element"). *Collins v. Rizkana*, 73 Ohio St.3d 65, 70, 652 N.E.2d 653, 658 (Ohio 1995). The Court determines the first two elements of clarity and jeopardy as matters of law, whereas the causation and overriding justification elements are questions of fact. *Id.*

■ A claim for wrongful discharge in violation of public policy embodied in stat-

ute prohibiting discriminatory practices will fail if the underlying discrimination claim fails. *Howard v. Contech Construction Prods., Inc.*, Case No. CA2003–01–018 2003 WL 22887954 (Ohio App. 12th Dist. Dec. 8, 2003)(unreported)(citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir.1999); *Robinson v. Nationwide Ins. Companies*, Case No.2000–L–119, 2001 WL 1647144 (Ohio App. 11 Dist. Dec. 21, 2001)). Because Rohal's claim that he was terminated because of his disability fails, his corresponding claim that he was terminated in violation of Ohio's public policy against disability discrimination likewise fails as a matter of law. Timet's Motion for Summary Judgment as to this claim is therefore **GRANTED.**

### 3. *Retaliation*

Ohio Revised Code § 4112.02(I) makes it an unlawful employment practice

> For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

Rohal alleges that Timet violated this statute by terminating him for giving truthful testimony in a legal proceeding involving another supervisory employee, Larry Weller.[11]

In order to establish a prima facie case of retaliation under Section 4112.02(I), Rohal must show that (1) he engaged in protected activity; (2) Timet knew of his participation in the protected activity; (3) he was the subject of adverse employment action; and (4) that a causal link existed between the protected activity and the adverse action. *Chandler v. Empire Chems., Inc.*, 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954 (1994)(citing *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir.1984)). If Rohal establishes a prima facie case of retaliation, the burden then shifts to Timet "to articulate a legitimate reason for its action." *Id.* If that burden is met, the burden then shifts back to Rohal "to show that the articulated reason was merely a pretext." *Id.* Again, Rohal may demonstrate pretext by demonstrating that the proffered reason had no basis in fact, was false or was insufficient to motivate the discharge. Whether to draw an inference of retaliatory motivation sufficient to establish a causal connection between the protected activity and the adverse employment action may depend on whether the retaliatory action closely follows the employee's participation in the protected activity. *Baker v. The Buschman Co.*, 127 Ohio App.3d 561, 127 Ohio App.3d 561, 713 N.E.2d 487 (1997).

After Weller was terminated, Timet's attorneys interviewed Rohal and several other employees regarding Weller's claims. Rohal was supportive of Weller. Two months after his termination, Rohal executed an affidavit in support of Weller's

---

11. Rohal also alleges that his termination violated the public policy against retaliating against an employee for giving truthful testimony in a legal proceeding. This Court, however, has already dismissed Rohal's public policy claim as it relates to his assertion of retaliation. Following the reasoning in *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 773 N.E.2d 526 (Ohio 2002), this Court determined that the relief available under Ohio Rev.Code § 4112.99 for Rohal's statutory claim of retaliation adequately protects society's interests. *See* Opinion and Order on Defendant's Motion to Dismiss, March 31, 2004 (holding that the public policy expressed by Ohio Rev.Code § 4112.02(I) will not be jeopardized by the lack of a common law tort remedy).

opposition to Timet's motion for summary judgment. Rohal was vocal about his support for Weller and told other employees that Weller was a better manager than Greg Judy, Weller's replacement.

Timet asserts that Rohal did not engage in protected activity prior to his termination. Moreover, Timet maintains that Rohal cannot rely on the content of his interview with the company's attorney because the interview was privileged, although it never asserted the privilege during the discovery process in this case.

█ Rohal, however, does not rely on any particular statements made to Timet's attorney during the interview to form the basis of his retaliation claim. Rather, Rohal contends that it was well-known that he was supporting Weller in his case and his work environment changed dramatically from the moment he gave the interview to Timet's attorney. Rohal has adduced evidence that his supervisor, Greg Judy, made negative comments to him on subjects that he could only have learned by knowing what Rohal said during his interview with Timet's attorney and that reveal his knowledge that Rohal was supporting Weller. The issues are whether he engaged in protected activity or, more particularly, "testified, assisted, or participated in any manner in any investigation, proceeding, or hearing," and whether Timet knew about it. Ohio Rev.Code § § 4112.02(I). On these material issues, questions of fact remain in dispute.

Moreover, genuine issues of material fact remain in dispute as to whether there was a causal link between Rohal's participation in Weller's case and his termination. Although Rohal did not execute the affidavit in support of Weller's opposition to Timet's motion for summary judgment until after his termination from Timet, reasonable minds could conclude that Timet management was aware while Rohal

was still working that Rohal would be a supportive witness and would give positive testimony in the Weller case. Rohal has adduced evidence that Judy began to criticize and discipline him almost immediately after the attorney interviews. Rohal had received satisfactory performance evaluations under Weller and was praised as an excellent employee at Timet for over 24 years. After Judy replaced Weller and became Rohal's supervisor, Judy treated Rohal differently and made threats of firing Rohal more than once. By the time Prystaloski began his analysis for the reduction in force, Judy had already documented Rohal's files with bad performance evaluations. Prystaloski agrees that the bad performance evaluation was the basis for the decision to select Rohal rather than other supervisors for the reduction-in-force.

Given these factual disputes, Rohal has also adduced sufficient evidence to preclude summary judgment on the issue of pretext. Although Timet has articulated a legitimate business reason for his termination, the evidence is such that a reasonable jury could return a verdict for Rohal on whether Timet was actually motivated to include him in the reduction in force in retaliation for actively participating in Weller's case.

For these reasons, Timet's Motion for Summary Judgment on Rohal's retaliation claim is **DENIED**.

## C. DeSanzo's Claims

Plaintiff DeSanzo asserts state law claims for age-based discrimination and termination of employment in violation of public policy. Defendant Timet asserts that DeSanzo's claim for age discrimination under Ohio Rev.Code § 4112.14 and his corresponding public policy claim fail as a matter of law.

## 1. *Age Discrimination*

Ohio Revised Code § 4112.14(A) provides in pertinent part:

No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of Ohio Revise Code § 4112.14(A), a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 803 N.E.2d 781 (Ohio 2004). In a reduction-in-force termination case in which the employer eliminated positions due to economic necessity, the age discrimination plaintiff "carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir.1986). Where a company is reorganizing or reducing its work force, a plaintiff-employee must present "additional direct, circumstantial, or statistical evidence that age was a factor in the termination in order to establish a prima facie case." *Id.; Murphy v. East Akron Community House*, 56 Ohio App.3d 54, 57, 564 N.E.2d 742, 745 (1989).

In this case, DeSanzo was not replaced. An employee is "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990); *see also Atkinson v. International Technegroup, Inc.*, 106 Ohio App.3d 349, 359, 666 N.E.2d 257, 264 (1995). After DeSanzo was terminated, his work was divided among the remaining four managers and his duties eventually were assigned to Knecht, who also performed additional duties at the same time. Moreover, DeSanzo cannot demonstrate that age was a factor in the decision to terminate him. DeSanzo argues that Timet retained younger employees and that fact alone is proof of age discrimination. This argument, however, mischaracterizes the fourth element as it applies in a reduction in force setting. "The age difference between an employee terminated during an economic cutback and a retained employee does not necessarily establish a prima facie age discrimination case." *Gordon v. Universal Electronics, Inc.*, Case No. 18071, 1997 WL 625485 *6 (Ohio App. 9th Dist. Oct. 1, 1997)(unreported) (citations omitted).

Moreover, Knecht, the individual who took over DeSanzo's job duties after the lay-off, is only 5½ months younger than DeSanzo. This difference is age obviously is not substantial. *See Coryell*, 101 Ohio St.3d at 180 n. 5, 803 N.E.2d at 781 (collecting cases holding that age differences of 2, 5 and 7 years were not substantial). "In the age-discrimination context, such an inference [that the employment decision was based on age] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

In this case, there is no basis to conclude that age was a factor in the decision

to terminate DeSanzo. For these reasons, Timet's Motion for Summary Judgment as to DeSanzo's age-based discrimination claim is **GRANTED.**

### 2. *Public Policy Claim*

Because DeSanzo's claim that he was terminated because of his age fails, his corresponding claim that he was terminated in violation of Ohio's public policy against age discrimination likewise fails as a matter of law. *Howard,* 2003 WL 22887954 at *7. Timet's Motion for Summary Judgment as to this claim is therefore **GRANTED.**

### IV.

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** The Clerk is directed to enter judgment in favor of Timet as against Plaintiff John DeSanzo, only. This matter will proceed to trial as to Valle's claims of promissory estoppel, implied contract and negligent misrepresentation; and as to Rohal's claim of retaliation.

**IT IS SO ORDERED.**