BAKER, Appellant,

v.

THE BUSCHMAN COMPANY, Appellee.

[Cite as *Baker v. The Buschman Co.* (1998), 127 Ohio App.3d 561.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA97–11–221.

Decided May 18, 1998.

*Jacobs, Kleinman, Seibel & McNally* and *Mark J. Byrne,* for appellant.

*Taft, Stettinius & Hollister, William K. Engeman* and *Lisa A. Huelsman,* for appellee.

---

KOEHLER, Judge.

Plaintiff-appellant William Baker appeals a judgment of the Butler County Court of Common Pleas granting summary judgment to defendant-appellee, The Buschman Company. We affirm.

Appellant was an employee of appellee and is African–American. On the morning of December 2, 1993 at about 7:15 a.m., an incident occurred in the men's rest room on appellee's premises between appellant and Laszlo Feihinger, a white employee of appellee. Feihinger was a janitor for appellee. Appellant described the incident in his deposition as follows:

"I went over to the bathroom * * * [a]nd [Feihinger] said, 'Hey, hey.' And I didn't give him no response. I didn't look up or anything, I didn't say anything. So I went over to wash my hands and then he kept saying, 'Hey, hey.' And so as I was reaching out, he came up and hit me in the side. And I told [Feihinger],

'Don't put your hands on me no more.' I said, 'Don't put your damn hands on me ever again.' "

Feihinger reported the incident to his supervisor, Jim Daniel, and told him that appellant had verbally attacked him, using vulgar and profane language. A few hours after the incident, Feihinger and appellant were asked to take a drug test. Feihinger agreed to take the test, but management did not require him to take the test. When appellant was asked to take the test, appellant stated that he "tried to fight [taking the drug test]. I didn't want to take the drug test." After several hours, appellant eventually agreed to take the drug test after "the union told me if I didn't take it I would be fired." Appellant took the drug test at Woodlawn Bethesda Care at approximately 1 p.m., and the test results were negative. Appellant filed a charge of discrimination with the Ohio Civil Rights Commission on December 6, 1993.

In February 1995, appellant asked his supervisor, Bill Strunk, whether he could use "safety tips" with his gym shoes. Appellant's employment position required him to have steel-toed shoes. Appellant described "safety tips" as a protective covering that could be worn on the outside of regular shoes. Appellant claims that when he asked Strunk whether he could wear safety tips, he was told that in order to wear them, he would need a note from a doctor. Appellant did not get a note from a doctor, but contends that white workers were allowed to wear safety tips without a note from a doctor.

Appellant also claims that in April 1995, he was taken off his regular job of packing the conveyors and given the assignment of building skids and boxes. Appellant's position designation with appellee was a "crater." Appellant admits in his deposition that packing the conveyors and building skids and boxes are part of the duties within the job classification of a "crater."

On October 31, 1996, appellant filed a complaint against appellee. In his complaint, appellant alleged that appellee (1) violated R.C. 4112.02 and 4112.99 by discriminating against him because of his race; (2) invaded his privacy by requiring him to undergo a drug test without his consent; and (3) retaliated against him because he filed a charge of discrimination against appellee, a violation of R.C. 4112.02(I) and 4112.99.

On July 31, 1997, appellee filed a motion for summary judgment. Appellee argued that the motion should be granted because appellant "cannot present sufficient evidence in support of any of his claims to permit a reasonable jury to find in his favor, requiring that his claims be dismissed." In its motion for summary judgment, appellee presented a different view of the incident on December 2, 1993. Jim Daniel, a maintenance supervisor for appellee, made the following statements in his affidavit:

"On December 2, 1993, Feihinger came to me in the morning and told me that [appellant] had cussed him out and called him names in the men's rest room that morning. Feihinger explained to me that [appellant] had walked across his freshly mopped floor, stepping through the 'caution wet floor' barricades. When Feihinger asked [appellant] why he walked across the floor, [appellant] attacked him verbally, using vulgar and profane language that Feihinger refused to repeat. Feihinger said that another employee, Bill Branch, was present in the rest room and witnessed the entire event.

"I then spoke to Bill Branch and asked him if he witnessed an altercation between Feihinger and [appellant] in the men's rest room that morning. Branch confirmed that he was present and witnessed [appellant] track dirt on Feihinger's freshly mopped floor. He also witnessed Feihinger calmly ask [appellant] several times why he had walked across the wet floor and witnessed [appellant] ignore [Feihinger]. Branch also explained that Feihinger tapped [appellant] on the shoulder and then [appellant] sprang around and verbally attacked Feihinger, cussing him out.

"I then spoke with [appellant] and asked him if he would apologize to Feihinger. [Appellant] refused. Although he did not deny that the altercation had occurred, he claimed that Feihinger had cussed him out as well. I then went to Branch and asked Branch if he had witnessed Feihinger cussing out [appellant] and whether Feihinger did anything to provoke [appellant] and Branch said no."

Appellee also submitted an affidavit by Feihinger which is consistent with Daniel's account of the incident.

The trial court granted appellee's motion for summary judgment on November 5, 1997. The trial court held that there was "no genuine issue of material fact and that [appellee] is entitled to judgment as a matter of law as to all of [appellant's] claims." Appellant appeals this decision and presents a single assignment of error:

"The trial court erred to the prejudice of the plaintiff/appellant William Baker in dismissing his claims in response to the defendant's motion for summary judgment."

■ Appellant argues that the trial court erred in granting appellee's motion for summary judgment. When reviewing a grant of summary judgment, a reviewing court must follow the standard set forth in Civ.R. 56(C), which specifically provides that before summary judgment can be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one

conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Dalton v. Ft. Hamilton–Hughes Mem. Hosp.* (Apr. 20, 1998), Butler App. No. CA97–09–174, unreported, at 4–5, 1998 WL 191418, following *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1131–1132.

"Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Gerdes v. Super Am. Group* (Apr. 21, 1997), Butler App. No. CA96–08–171, unreported, at 5, 1997 WL 194872, discretionary appeal not allowed (1997), 79 Ohio St.3d 1491, 683 N.E.2d 792. When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 445, 666 N.E.2d 316, 319–320.

In arguing that the trial court erred in granting appellee's motion for summary judgment, appellant presents the following three issues for review: (1) The trial court erred in finding no issue of material fact existed as to his claim of race discrimination; (2) The trial court erred in granting summary judgment as to his claim for retaliation; and (3) The trial court erred when it found that appellant elected to pursue a remedy of race discrimination with the Ohio Civil Rights Commission and therefore was barred from pursuing a direct action for discrimination under R.C. 4112.99. We address appellant's issues in the order they have been presented.

I

Appellant argues that the trial court erred in finding that no issue of material fact existed as to his claim of race discrimination. In order to establish a prima facie case of discriminatory treatment, appellant must prove that (1) he is in a protected class, (2) he suffered adverse employment action, (3) he was qualified for the position he held, and (4) comparable nonprotected persons were treated more favorably. *Myers v. Goodwill Industries of Akron, Inc.* (1997), 122 Ohio App.3d 294, 701 N.E.2d 738, following *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677–678, and *Sutherland v. Nationwide Gen. Ins. Co.* (1994), 96 Ohio App.3d 793, 801, 645 N.E.2d 1338, 1343–1344.

In the present case, the trial court held that summary judgment in favor of appellee was proper because appellant was unable to establish the fourth element of the prima facie case of discrimination. The trial court found that appellant and Feihinger were not similarly situated. A review of the facts shows

that the trial court reached the correct conclusion. Appellant and Feihinger were asked to take a drug test. Feihinger agreed to take the test, but appellant used every means available to avoid taking the drug test. Appellant eventually took the drug test many hours later after learning from his union representatives that he was required to take the test or else he would lose his job.

Appellant's reluctance to submit to a drug test verses Feihinger's willingness made appellant suspect. It is not difficult to see from the undisputed facts why appellee, after asking both appellant and Feihinger to take a drug test, decided to pursue having appellant take the drug test. The decision whether to require appellant and/or Feihinger to take the test was not based upon two individuals in comparable circumstances. Therefore, appellant cannot establish a prima facie case of discriminatory treatment because he cannot show that comparable nonprotected persons were treated more favorably.

A more credible example of a comparable nonprotected person being treated more favorably would be if both appellant and Feihinger refused to take the test, and only appellant was required to take the test. Additionally, appellee presented evidence that the decision to require appellant to take the drug test was because his actions were more erratic than Feihinger's actions. Accordingly, after having viewed the evidence most strongly in favor of appellant, we find that, as a matter of law, appellant has not established a prima facie case of discriminatory treatment.

## II

Appellant argues in his second issue that the trial court erred in granting summary judgment as to his claim for retaliation. In his complaint, appellant contends that "the actions of [appellee] in failing to provide safety tips and reassigning [appellant] from packing to making skids is in retaliation for [appellant's] actions in filing a charge of discrimination against [appellee] on December 6, 1993." Appellant states in his complaint that he was refused the use of safety tips in February 1995, and he was given the assignment of making skids in April 1995.

In order to prove a retaliatory discrimination claim, a plaintiff must prove by a preponderance of the evidence that (1) he was a member of a protected class or he engaged in a protected labor activity under Ohio or federal law, (2) plaintiff's protected status or his engagement in protected activities was known to the defendant, (3) defendant took an employment action adverse to plaintiff and the stated reasons for that action were not the true retaliatory reason, and (4) there was a causal connection between the protected activity and the adverse

employment action. *Rudy v. Loral Defense Systems* (1993), 85 Ohio App.3d 148, 155, 619 N.E.2d 449, 454.

In establishing whether there is a causal connection between the protected activity and the adverse employment action, courts have looked at the amount of time between the two events. In *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 622 N.E.2d 1130, jurisdictional motion overruled (1993), 67 Ohio St.3d 1481, 620 N.E.2d 854, a case that involved an allegation of retaliatory discharge, the court held that an employee needed to show that "the alleged retaliatory action followed [the employee's] participation in the protected activity sufficiently close in time to warrant an inference of retaliatory motivation."

For retaliation claims in Ohio, "Federal law provides the applicable analysis for reviewing retaliation claims." *Wright v. Petroleum Helicopters, Inc.* (Sept. 18, 1997), Cuyahoga App. No. 71168, unreported, at 10–11, 1997 WL 578939, following *Chandler v. Empire Chem., Inc.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954, discretionary appeal not allowed (1995), 72 Ohio St.3d 1415, 647 N.E.2d 1390. While reviewing the amount of time between the protected activity and the retaliatory act, a federal court held that "as a matter of law, three months was too long to support an inference of retaliation." *Reeves v. Digital Equip. Corp.* (N.D.Ohio 1989), 710 F.Supp. 675, 677. Furthermore, in *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.* (C.A.6, 1986), 783 F.2d 50, certiorari denied (1986), 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712, it was alleged that an employer retaliated against an employee because the employee filed a racial discrimination suit against the employer. The court held that "the time span of over one year from the time [the employee] filed suit, to the time of his firing, militates against a finding of retaliatory discharge." *Id.* at 54.

In the present case, the trial court held in its opinion that since "the actions of [appellee] occurred a substantially long period of time after the filing of charges by [appellant], * * * there is insufficient evidence to support the retaliation claim." The trial court reasoned that "the time periods involved between the filing [of the] action by [appellant] and the alleged retaliatory action militates against finding of retaliatory action by [appellee]."

After having reviewed the record, we concur with the trial court and find that no reasonable person could conclude that a causal connection can be established between the protected activity and the alleged adverse employment action. Appellant in his complaint based his retaliation claim solely upon a race discrimination claim filed against appellee and two adverse employment actions occurring more than one year later. Based upon these facts, we find that appellant presented insufficient evidence to show that there was a causal connection between the protected activity and the alleged adverse employment action in order to overrule appellee's motion for summary judgment.

### III

Appellant argues in his third issue that the trial court erred by finding that appellant was barred from pursuing a direct action for discrimination under R.C. 4112.99 because appellant elected to pursue a remedy for discrimination with the Ohio Civil Rights Commission. We do not need to address this issue because we have already determined with respect to appellant's first issue that the facts of the case do not support a prima facie case for discrimination.

Accordingly, we overrule appellant's assignment of error.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.