DECISION
Robert D. and Amanda Miller, plaintiffs-appellants, appeal a decision of the Franklin County Court of Common Pleas. The trial court granted a motion for summary judgment in favor of Superior Electric Company, defendant-appellee. We affirm.
On August 21, 1996, Robert Miller ("Robert") and Larry Keller were injured when they were struck by a jolt of electricity while working inside a metal enclosed electrical transformer built by appellee in 1986. See, also, Keller v. Northwest Conduit Corp.
(Sept. 26, 2000), Franklin App. No. 99AP-1403, unreported. Robert and Keller were employees of Northwest Conduit Corporation at the time of the accident. Robert stated in his deposition that he and Keller used a jackhammer inside the box because a pipe in the box "was going the wrong way. It was going underneath [a] building, and they needed it turned to hook it up into another box that we [were] putting in." Robert testified that they were able to get into the box after a representative from Bank One Corporation ("Bank One"), the owner of the building, cut the lock off of the transformer box. He also stated that even though the transformer box was still energized, he was directed to use a jackhammer in the box because they had worked around live cable before. After they finished jackhammering, an electrical explosion occurred, which threw Robert away from the box. Robert was seriously injured from the explosion, receiving third degree burns on his back.
On January 9, 1997, appellants filed a complaint against appellee and Bank One. In the complaint, Robert alleged that he was injured "when suddenly and without warning an electrical charge arced from the electrical box to the jackhammer shocking [appellant]." Amanda Miller, Robert's minor daughter, alleged that she "has suffered by reason of her father's injuries, the loss of her father's society and services, and will be so deprived in the future." Appellants argued that appellee "negligently failed to properly wire and otherwise construct and install the electrical box * * * and improperly created and maintained a nuisance to the general public." On June 21, 1999, appellants voluntarily dismissed their claims against Bank One.
Appellee filed a motion for summary judgment arguing that appellants could not demonstrate that appellee owed them a duty because of the unforeseeability of the accident. Appellee claimed that Robert's actions were not foreseeable because "[n]o reasonably prudent person would operate a jackhammer inside a live transformer box." On November 23, 1999, the trial court granted appellee's motion for summary judgment. The court held that "it was not `reasonably foreseeable' that a locked transformer would be a danger or that the lock on the transformer would be cut off and unqualified workers would then operate a jackhammer inside a live transformer." Appellants appeal this decision and present the following assignment of error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE WHEN THE RECORD REVEALS GENUINE ISSUES OF MATERIAL FACT ON THE ELEMENTS OF NEGLIGENCE.
Appellants argue in their assignment of error that the issues of breach of duty and causation were factual questions for a jury. Appellants contend that appellee had knowledge of the potential for harm. Appellants also contend that if appellee had installed the transformer with a "dead-front," the explosion would not have occurred.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Rodgers v. Custom Coach Corp. (June 22, 2000), Franklin App. No. 99AP-1167, unreported.
Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco Industries, Inc. v. Applied Cos.
(1993), 67 Ohio St.3d 344, 346. "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Baker v. The Buschman Co. (1998),127 Ohio App.3d 561, 566.
In a negligence action, a plaintiff must show: (1) the existence of a duty; (2) breach of that duty by the defendant; (3) proximate cause between the breach and some damage to the plaintiff; and (4) damage to the plaintiff. Hubbell v. Ross (Nov. 9, 1999), Franklin App. No. 99AP-294, unreported, followingMussivand v. David (1989), 45 Ohio St.3d 314, 318. In order to establish proximate cause, foreseeability must be found.Westfield Ins. Co. v. HULS Am., Inc. (1998), 128 Ohio App.3d 270,286. However, the causal connection between a defendant's act and the resulting damage may be broken by an intervening event. QueenCity Terminals, Inc. v. Gen. Am. Transp. Corp. (1995), 73 Ohio St.3d 609,619. In determining whether an intervening event breaks the causal connection between negligence and injury depends upon whether that intervening event was reasonably foreseeable by the one who was guilty of negligence. Westfield, at 286.
In the present case, appellants assert that the negligent act committed by appellee was building the transformer with a "live-front" installation as opposed to a "dead-front" installation. Appellants' expert witness, Eugene Bartel, explained that a "dead-front" installation "is without live parts exposed to a person operating inside the equipment * * * [while a "live-front" installation has] [l]ive parts exposed to a person operating inside the equipment." Bartel also explained:
 [The transformer] was, in fact, a live front in terms of the way it was put in. So that meant that there was more exposed energized segments in there that was available for incidental contact and accidental contact. That's, in fact, where the flashover or accident really occurred was at the taped connections that were in there that were not actually insulated properly.
He also stated that he believed appellee improperly installed the transformer because appellee "did not follow the manufacturer's installation instructions regarding installing it as a dead-front installation." He further stated that "[h]ad this been a dead front, most likely this accident wouldn't have happened * * * because the arresters would not have had a live connection at their top."
After construing Bartel's deposition most strongly in appellants' favor, it would be reasonable to find that appellants presented sufficient evidence that appellee was negligent in its installation of the transformer. However, it is also important to review the evidence in order to determine whether intervening events broke the causal connection between appellee's actions and appellants' damages.
A review of the undisputed facts of the present case demonstrates that several intervening events occurred between appellee's alleged negligent installation in 1986, and the accident that occurred in 1996. The lock on the transformer box was cut off of the doors allowing access to the inside of the box. Someone made the decision to not turn off the electricity in the box before any work was done inside the box. Robert and Keller were then directed to use a jackhammer inside an energized transformer box, jackhammering within inches of high voltage lightning arresters.
It was not reasonable for appellee to foresee unqualified individuals using a jackhammer inside an energized transformer box after the lock was cut. As stated by appellants' expert witness, Bartel, "* * * going in there with a live transformer * * * should not be done, no matter what the capabilities of these people. Definitely they were not qualified to be in a transformer of this sort. But even if they were qualified, they shouldn't have been in there in a live transformer doing this type of work." George Rago, a safety specialist, testifying as an expert witness for appellants, similarly stated:
 A proper hazard risk and danger analysis would have told them don't open this transformer; get somebody from the power company; get an electrician; don't stick an untrained, uneducated laborer in this situation where he's exposed to high voltage where he could be killed and then tell them to take a conductive piece of material such as a jackhammer and stick it in between the hot points of a transformer. You're going to kill somebody for sure.
Additionally, Robert stated in his deposition that he blamed the accident on Bank One "[b]ecause they wouldn't shut the electric off."
Accordingly, we find that the trial court did not err when it sustained appellee's motion for summary judgment. Appellants are unable to establish that appellee's actions were the proximate cause of the accident because the intervening events were not reasonably foreseeable. Therefore, the causal connection between negligence and injury was broken. Appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.