**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1127n.06

No. 11-4277

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 01, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RHONDA C. FINLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF TROTWOOD; MICHAEL | ) | SOUTHERN DISTRICT OF OHIO |
| LUCKING, Trotwood City Manager in his | ) | |
| Individual and Official Capacities. | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  SILER and COOK, Circuit Judges; STEEH, District Judge.*

COOK, Circuit Judge.  Plaintiff Rhonda C. Finley appeals the district court's order granting summary judgment to defendants, City of Trotwood, Ohio ("Trotwood"), and City Manager Michael Lucking ("Lucking").  Finley brings multiple discrimination claims, in addition to her claims of retaliation, hostile work environment, and intentional infliction of emotional distress.  For the following reasons, we AFFIRM.

I.

Finley, a forty-eight-year-old African-American female, began her employment at Trotwood in 1997 as a part-time dispatch worker with the Trotwood Police Department.  In 2005, Lucking

_____

*The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

became Trotwood's City Manager. Soon thereafter, Lucking promoted Finley to Acting/Interim Director of the Planning and Development Department. Effective July 5, 2006, Lucking selected Finley, over a Caucasian male candidate, for the position of Director of Planning and Development ("Director"). For this promotion, Finley received an unprecedented 21.27% pay increase, from $25.99 to $31.52 per hour.

In response to Trotwood's financial difficulties, the City Council directed Lucking to submit a budget proposal reducing the city's expenses. Lucking's cost-cutting measures included a vehicle-sharing program requiring all city employees, including Finley, to share their assigned vehicles. Additionally, Lucking reclassified a director, Terry Lodge, and reduced his salary from $39.25 to $21.97 per hour. Thus, Lodge, a sixty-one-year-old white male, had already undergone a reclassification before Finley's reclassification was even considered.

Trotwood later formed a budget committee composed of Lucking, Jon Stoops,[1] and Patricia Shively to address the city's fiscal problems. The committee proposed eliminating the Director of Planning and Development position ("Planning Director") and replacing it with the role of Economic Development Administrator ("Administrator"). Lucking agreed to assume any residual duties of Planning Director without additional compensation. Trotwood also laid off four police officers and one maintenance technician, all of them male, and four of them Caucasian. Proposed budget cuts for the year exceeded $460,000.

---

[1]Stoops was Trotwood's Director of Finance. He retired in early 2009 and was replaced by the Assistant Finance Director.

The City Council members did not approve the budget proposal until February 16, 2009 ("2009 Budget"), which became effective thirty days later. Pursuant to the 2009 Budget, Trotwood reduced Finley's salary from $40.43 to $33.17 per hour. Additionally, she lost direct supervisory authority over her staff and was no longer authorized to serve on the Board of the Trotwood Chamber of Commerce. In mid-2009, as a secondary budget-cutting measure, Trotwood implemented a 7.5% salary reduction on all non-union employees, which applied to Finley.

Early December 2008, Finley submitted an absentee report requesting 160 vacation hours, from the end of December to late January 2009. Although Lucking denied this initial request, he granted her revised request of seventy-two hours.

Late December 2008, before her reclassification became effective, Finley filed employment discrimination and retaliation claims with the Equal Employment Opportunity Commission ("EEOC"). On December 30, 2008, she revised her EEOC Charge ("Revised EEOC") to include age discrimination.

On April 23, 2009, Lucking gave Finley a verbal warning for her behavior at a City Council meeting conducted three days earlier. At that meeting, Finley directed any questions to Lucking and referred to him as the Planning Director, which Lucking perceived as disrespectful. Other City Council members—but not Councilwoman Mary McDonald—agreed the comments came across as disrespectful.

Lucking absorbed Finley's duties while she was on medical leave from July 2009 to September 2009. When Finley returned, Lucking issued a memorandum directing Finley to focus on developing a prospective tenant base for the Trotwood Commerce Park.

On April 26, 2010, Finley filed her Verified Complaint alleging race, gender, and age discrimination, as well as retaliation and creation of a hostile work environment. Two months later, Trotwood moved for summary judgment on all claims. Lucking quickly followed, filing both an affidavit supporting Trotwood's motion and his own motion for summary judgment. The district court granted both motions and dismissed the case. Finley timely appealed. We affirm.

II.

A. Standard of Review

We review de novo a district court's grant of summary judgment. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, no issues of material fact remain, and the moving party is entitled to judgment as a matter of law. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The "mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (internal quotation marks omitted). Accordingly, the district court must conduct "a preliminary assessment of the evidence" in order to determine whether the plaintiff presents a material issue of fact. *Hartsel*, 87 F.3d at 799. Although this case involves both Title VII and Ohio

antidiscrimination law, the same analysis applies to both.[2] *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

Finley confuses our standard of review. We review whether Finley has met her burden, not whether Trotwood defeated Finley's claim. She cites to sections of the defendants' briefs where they highlight the lack of factual support for her claims. As this Court explained in *Hartsel*, "[t]he moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show . . . that there is an absence of evidence to support the nonmoving party's case." *Hartsel*, 87 F.3d at 799 (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets this initial burden, the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). Because the plaintiff in a discrimination case has the ultimate burden of proof, "[t]he pivotal question" is whether she "has presented a jury question as to each element of [the] case." *Hartsel*, 87 F.3d at 799.

B. Federal Claims

1. Race, Gender, and Age Discrimination

Under the *McDonnell Douglas* burden-shifting framework, a Title VII plaintiff utilizing circumstantial evidence must first make a prima facie case of discrimination. *Griffin v. Finkbeiner*,

---

[2]The only difference being that Ohio law permits individual liability, while Title VII does not. Therefore, when discussing the liability of the "defendants," collectively, we refer to Lucking's liability under the state claims and Trotwood's liability under both federal and state law.

689 F.3d 584, 592-93 (6th Cir. 2012). Finley must show that (1) she is a member of the protected class; (2) she suffered adverse employment actions; (3) she was otherwise qualified for the position; and (4) following her rejection, the position was filled by a person outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Finley first argues that Carl Daugherty, a Caucasian male, replaced her as Planning Director and that she endured harsher treatment than four similarly situated individuals outside her protected class: Terry Lodge (Caucasian male), Patricia Shively (Caucasian female), Carl Daugherty (Caucasian male), and Thomas Odenigbo (African-American male). The only evidence that Daugherty replaced Finley comes from Councilwoman McDonald's deposition, where she testified that Daugherty had assumed "a number of Mrs. Finley's previous responsibilities." This evidence, however, aligns with Trotwood's stance that Finley was not "replaced," because her job responsibilities were merely distributed among several employees. When entities downsize, a plaintiff "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties." *Schoonmaker v. Spartan Graphics Leasing LLC*, 595 F.3d 261, 265 (6th Cir. 2010). Here, several employees, including Lucking and Portia Hill, the department secretary, shouldered some of Finley's former responsibilities as Planning Director following her demotion. Furthermore, Daugherty continued to perform his original responsibilities after Finley's alleged "replacement."

Finley's "harsher treatment" argument also fails, as the record makes plain that she fared no worse than similarly situated employees. Not only was her salary reduction less than half Lodge's

pay cut, but also her claim that Trotwood delayed Lodge's salary reduction until June 2009 lacks evidentiary support. Likewise, her final two arguments involving Lodge—that his reclassification resulted from poor job performance and that the city gave him additional work in another department to "restore" his salary—contradict the record. McDonald testified that "[Lodge's reclassification] strictly had to do with balancing the budget" (R. 56, McDonald Dep. at 118), and Finley admitted she does not know Lodge's past or present salary (R. 49, Finley Dep. at 66-67). Further, Stoops's testimony directly contradicts Finley's assertions.

Finley also compares herself to Patricia Shively. She argues that Shively's promotion to Finance Director demonstrates harsher treatment because Trotwood "did not review its budget and try to determine a way to maintain [Finley's] salary" as it did for Shively. This claim overlooks the centrality of the Finance Director position; Trotwood's bylaws specifically prohibit eliminating it.

In comparing her situation with Daugherty's, Finley bristles that she and Daugherty now occupy the same pay grade, gleaning unfairness because Daugherty "has never held a Director position or brought $50,000,000 in investments to the City." As the district court correctly noted, however, "receiving the same salary, standing alone, is not discriminatory."

As the final comparator, Finley targets the better treatment Thomas Odenigbo, the African American Public Works Director and City Engineer, enjoyed. Any comparison to Odenigbo could not show race discrimination, of course. And regardless, her complaint comprises one occasion regarding disapproval of time off.

Assessing all the evidence Finley sought to muster, none undermines the judgment here. She offers no legitimate comparisons that present a genuine issue of material fact regarding race, gender, or age discrimination.

2.  Retaliation and Creation of Hostile Work Environment

This Court also applies *McDonnell Douglas* to Finley's retaliation charge. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009). For a prima facie case of retaliation, Finley must present evidence that (1) she engaged in protected activity; (2) Trotwood was aware of the protected activity; (3) Trotwood took an adverse action against her; and (4) there was a causal connection between the protected activity and the alleged adverse employment action. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008) (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). The alleged adverse action must be materially adverse; that is, it would have dissuaded a reasonable worker from filing a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).

Finley claims unlawful retaliation based on four allegedly adverse actions that followed her filng an EEOC charge: "exclusion from meetings, weekly activity reports, and criticism; verbal warning; September 22, 2009 memorandum; and refusal to fund job related training." The district court correctly decided that her first two claimed acts of retaliation are not materially adverse actions under federal or state law. *See, e.g.*, *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 533 (6th Cir. 2011) (reporting of hours worked not materially adverse as it "affected neither [plaintiff's] position nor compensation"); *Moore v. Abbott Labs.*, 780 F. Supp. 2d 600, 620-

21 (S.D. Ohio 2011) (exclusion from meetings not adverse employment action); *Taylor v. H.B. Fuller Co.*, No. 06cv854, 2008 WL 4647690, at *8-9 (S.D. Ohio Oct. 20, 2008) (verbal warning insufficient to show adverse employment action).

Her other examples also fall short. First, narrowing of responsibilities without a corresponding decrease in pay or benefits, cannot be labeled an objectively adverse employment action. Second, though Trotwood denied Finley permission to take a particular course, it paid for her economic development certification. And Finley presents no evidence to suggest that the course she sought to take would have resulted in tangible employment benefits.

Likewise, Finley cannot prove her hostile work environment claim, which requires that she show conduct that is severe and pervasive enough to create an abusive work environment. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). We thus uphold summary judgment on Finley's retaliation and hostile work environment claims.

3. Wage Discrimination

Finley brings her wage-discrimination claims under the Lilly Ledbetter Fair Pay Act ("Ledbetter Act"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Equal Pay Act ("EPA"). Her two claims correspond to two distinct time periods: first, her stint as Acting/Interim Director of Planning and Development; second, her tenure as Director of Planning and Development.

The district court properly rejected Finley's first claim as time-barred and we adopt its reasoning. Finley's second claim, though timely, fails because, under the EPA, a plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work. The record supports the conclusion that because directors' work differed, their salary differences alone could not support Finley's claims of age or gender discrimination. Trotwood's uniform schedule compensates directors depending on their duties and responsibilities, and it paid Finley no less than at least two such directors, Lodge and Stoops. Finley fails to make out a prima facie case of wage discrimination.

## C. State Claims

### 1. Employment Discrimination, Retaliation, and Creation of Hostile Work Environment

Finley renews her claims under Title VII in her state actions against both Lucking and Trotwood. Because Finley's state claims for race and gender discrimination require the same prima facie evidentiary showing as her federal claims, her unmeritorious federal claims mean her state claims also fail. *See Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004). So too with her retaliation and hostile-work-environment claims. *See Baker v. The Buschman Co.*, 127 Ohio App.3d 561, 568 (Ohio App. 12th Dist. 1998) ("Federal Law provides the applicable analysis for reviewing Ohio retaliation claims"). Because Finley's claims against both Trotwood and Lucking involve the same law, evidence, and arguments, we affirm summary judgment for both, obviating any discussion of qualified immunity for Finley.

2. Intentional Infliction of Emotional Distress

We agree with the district court's treatment of this claim. Absent any evidence that Trotwood's actions were "extreme and outrageous," we affirm the district court's summary judgment on this claim, too.

III.

AFFIRMED.