NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0277n.06

No. 18-3360

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ALASHAE CRAWFORD,

      Plaintiff-Appellant,

v.

CHIPOTLE MEXICAN GRILL, INC.,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

May 28, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

Before: CLAY, COOK, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Alashae Crawford was fired from a supervisor position at a Chipotle Mexican Grill in southwestern Ohio. She then filed this lawsuit, alleging that Chipotle had violated federal and Ohio law by terminating her because of her race and because she had accused her manager of race discrimination. *See* 42 U.S.C. §§ 2000e-2, 2000e-3(a); Ohio Rev. Code § 4112.02(A) & (I). After discovery, the district court granted summary judgment for Chipotle. We AFFIRM in part and REVERSE in part.

I.

The facts of this case, in the light most favorable to Crawford,[1] are as follows: In February 2012, Chipotle hired Crawford, who is African American, as a crew member at one of its

---

[1] We view the facts and draw any inferences in the light most favorable to the party against whom summary judgment was entered. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). We "review the record as a whole" and "must disregard all evidence

southwestern Ohio restaurants. Shortly after, Jeysie Torres, who is Hispanic, became the restaurant's general manager. Although Crawford's performance evaluations reflected room for improvement, Torres took interest in her career and encouraged her to work toward a promotion. Just over a year after Crawford's hiring, Torres promoted her to the lowest supervisor position. Torres eventually moved to another Chipotle restaurant to help improve its performance; Crawford followed at Torres' request. Torres again quickly promoted Crawford.

Torres and Crawford had occasional disagreements at the new restaurant. Crawford confronted Torres several times about his perceived favoritism toward Hispanic employees; Torres would reply that Crawford was only sticking up for African-American crew members because she is black. Despite these disagreements, however, Torres and Crawford had a good working relationship.

In early 2014, Philip Shelton and several other African American crew members came to Crawford with concerns about their timesheets, which had been altered to reduce their hours worked. Crawford confronted Torres and the assistant manager Osbaldo Amaya, who is Hispanic, about the time-shaving. The two admitted they had altered the timesheets, claiming they did so under pressure to improve the restaurant's performance. In February 2014, Shelton called Chipotle's "Respectful Workplace" hotline about the time-shaving. Crawford overheard Shelton complaining during that call that Torres and Amaya "ha[d] been showing favoritism towards other Hispanic workers that work the same position as me." Chipotle's regional supervisor, Melvin Henriquez, investigated Shelton's complaint. He concluded that Shelton often forgot to clock in

---

favorable to [Chipotle] that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000). We present the facts in that same posture now and leave out, for present purposes, disputed evidence favoring Chipotle.

and out, and that the managers (including Crawford) had sometimes inadvertently shorted Shelton later when correcting his timesheets.

In early March 2014, Henriquez assigned Sam Revis, an experienced manager, to advise Torres on improving the restaurant's performance. Revis determined that the restaurant was in disarray; the employees did not follow food safety protocols, deliver acceptable customer service, or maintain sufficient cleanliness. Revis advised Torres to make personnel changes to increase productivity, but never specifically recommended that Torres terminate Crawford.

Meanwhile, "[i]n March of 2014, a short time before [Crawford's] termination, . . . Shelton showed [her] his paycheck," which indicated that he had not received his promised back pay from the time-shaving incident. Crawford "approached" Torres about the issue because she "believed that . . . Torres was purposely interfering with . . . Shelton getting his back pay." Crawford told Torres "that he was discriminating against . . . Shelton, . . . that he needed to stop harassing . . . Shelton," and "that he needed to pay . . . Shelton for the hours that Mr. Amaya had taken from . . . Shelton." Torres replied that "the only reason [Crawford] was defending . . . Shelton was because [she is] black."

Although Torres had previously been supportive of Crawford's career, their relationship changed after this conversation. Torres held a meeting with Amaya and Crawford in which he told the two that the "restaurant has basically bec[o]me a fun house, and we need to . . . stop being friends with our crew members"—i.e., be tougher on the crew members. But when Crawford implemented the directive, Torres told crew members that Crawford was "being an ass." Despite the newfound friction, Crawford was never formally disciplined for any alleged misconduct leading up to her termination.

Torres fired Crawford less than two weeks after she had confronted him about his alleged discrimination toward Shelton. On March 17, 2014, Torres took Crawford aside to inform her that he was firing her because the crew members did not like working with her. Torres was "very vague about" purported complaints from the crew and would not tell Crawford who had complained. Confused, Crawford asked why she hadn't heard about any complaints before; Torres replied that "it didn't really become a problem until Friday," even though nothing had happened the previous Friday that could have been the basis for that statement. Torres got in his car and left immediately after the conversation.

After filing a charge with the Equal Employment Opportunity Commission, Crawford brought federal and state claims against Chipotle. She alleged that she was fired because she is African American (discrimination), and because she had accused her manager of race discrimination (retaliation). Chipotle successfully moved for summary judgment on both claims, and Crawford timely appealed.

II.

Before considering whether summary judgment was proper, we first evaluate a crucial evidentiary question. Crawford clearly alleged in her complaint that "[a] short time before March 17, 2014, Plaintiff complained to Torres that he was discriminating against Phillip Shelton." In fact, the *only* protected activity she alleged in the complaint was that March 2014 conversation. Yet Chipotle's attorneys never asked Crawford about that conversation while deposing her. Crawford thus never testified in the deposition about the specific March 2014 conversation in which, she claims, she grilled Torres about his discriminatory behavior.

Fast-forward to post-discovery motions: Chipotle moved for summary judgment on the retaliation claim, asserting that Crawford had not testified about making any complaint that would

be protected by Title VII. Of course, this was true—Chipotle never asked Crawford about the conversation she had alleged in her complaint. So, in conjunction with her response to Chipotle's motion, Crawford submitted a declaration describing the March 2014 conversation. Chipotle argued that the district court could not consider the declaration because of the "sham affidavit" doctrine, which precludes attempts to "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). The district court agreed with Chipotle and refused to consider the declaration. Since the declaration was essential to Crawford's retaliation claims, summary judgment for Chipotle inevitably followed.

We review the evidentiary ruling for abuse of discretion, *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006), and conclude that it was in error. The sham affidavit doctrine does not apply to Crawford's declaration because the declaration did not contradict her deposition testimony. It merely addressed facts about which Crawford was not questioned during her deposition. At no point in the deposition did Chipotle's attorneys ask her, even indirectly, about the sole instance of protected activity alleged in her complaint. We of course agree that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid*, 790 F.2d at 460. But neither may a defendant refrain from posing crucial questions during a deposition and then move for summary judgment when the plaintiff, predictably, never answers the never-asked questions.

Chipotle points to a deposition question that, it contends, should have elicited testimony about the March 2014 conversation. After an extended discussion about the time-shaving issue Crawford described, Chipotle's attorney asked Crawford, "[i]s there anything else about that issue that you want to talk about?" Crawford answered, "No." Chipotle says that this "answer alone

should end the inquiry." At no time, however, was Crawford "directly questioned" about the March 2014 conversation that she had explicitly alleged in her complaint. *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907 (6th Cir. 2006). Nor was she ever asked generally whether she had ever accused Torres of discrimination. Chipotle's questions were simply not focused enough for Chipotle to now invoke the sham affidavit doctrine. In fact, even in a case where a deponent "was questioned generally" about a specific conversation, we allowed a later affidavit adding additional information because "he was not expressly asked" what had been said in the conversation, and so "was not under any obligation to volunteer everything . . . said." *Briggs*, 463 F.3d at 513. Crawford was not even "questioned generally" about the March 2014 conversation. We have no difficulty, therefore, concluding that the sham affidavit doctrine does not apply.

Because the district court "misapplie[d] the correct legal standard," it abused its discretion. *Aerel*, 448 F.3d at 906. The sham affidavit doctrine does not apply to Crawford's declaration, and we must consider the declaration in determining whether Chipotle is entitled to summary judgment.

### III.

We review summary judgment de novo, applying the same standards the district court used. *Franklin Am.*, 910 F.3d at 275. "In other words, summary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a) and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

Federal and Ohio labor law prohibits retaliating against employees who oppose unlawful employment practices. *See* 42 U.S.C. § 2000e-3(a); Ohio Rev. Code § 4112.02; *Braun v. Ultimate*

*Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016).[2]  To establish a prima facie case of retaliation, Crawford must show: (1) she engaged in protected activity (i.e., communicated opposition to discriminatory employment practices); (2) Chipotle was aware of the protected activity; (3) after Crawford engaged in protected activity, Chipotle took an adverse employment action against her; and (4) the protected activity caused the adverse action.  *Yazdian v. ConMed Endoscopic Tech., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015).  "The burden of establishing a prima facie case in a retaliation action is not onerous," and is "easily met."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

If Crawford establishes her prima facie case, the burden shifts to Chipotle to provide evidence of a "legitimate, nondiscriminatory reason" for terminating Crawford.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).  Then Crawford must show that Chipotle's proffered reason is mere pretext for unlawful retaliation.  *Id.* at 706–07.  She can do so with evidence that Chipotle's reason had no basis in fact, did not actually motivate the decision, or was insufficient to warrant the adverse action.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

A.

The first two prima facie elements are protected activity and the employer's awareness thereof—in other words, whether Crawford engaged in Title VII protected activity by telling

---

[2] The same analysis applies to retaliation claims under both federal and Ohio state law.  *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) ("Federal law provides the applicable analysis for reviewing retaliation claims" brought under Ohio law.).

Torres that "he was discriminating against" Shelton and "needed to stop harassing" him, and whether Torres understood her accusation as a Title VII protected complaint.

Here, an African-American woman approached her Hispanic manager and accused him of "discriminating against" an African-American co-worker by failing to give him proper back pay. A jury could appropriately consider the context—specifically, that Crawford had previously told Torres about complaints that he favored Hispanic crew members. It is also highly relevant that Torres responded to this charge in the same way he had responded to those previous complaints—by saying that Crawford was only defending her African American subordinates because she was black. A reasonable jury could conclude, given the context of this case, that Crawford engaged in protected activity by protesting what she believed was a racially discriminatory refusal to give Shelton his back pay. Thus, Crawford has satisfied the first element of her prima facie retaliation case. The same evidence—the underlying context, the specific words that Crawford used to register her complaint, and Torres' response—leads us to conclude that a reasonable jury could infer that Torres was aware that Crawford was protesting discriminatory employment practices. *See Yazdian*, 793 F.3d at 647. [3]

---

[3] Although the employer's awareness of the protected activity is formally a separate prima facie element, we often combine the analyses by using the employer's understanding as evidence of whether a complaint was protected activity in the first place. *See, e.g.*, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) ("When Montell reported the comments, [the HR representative] did not respond that such comments clearly did not constitute sexual harassment. Instead, [the HR representative] investigated to determine whether such comments were actually made."); *Yazdian*, 793 F.3d at 647 (pointing to an employer's subsequent investigation of racial discrimination, in response to the complaint, as evidence that the complaint was protected activity in the first place); *Samuels*, 591 F. App'x at 485 (concluding that a complaint was not protected conduct, in part because "[n]othing in the contents of Samuels' statements, nor the events that transpired afterwards, suggests that Tomlin took issue with anything Samuels said in her statement"); *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 997 (6th Cir. 2009) ("[T]here is no evidence that either Goshen or Corsetti understood the report to be charging discrimination . . . ."). Intuitively, this makes sense; an accusation that is understood to be protected activity was probably protected activity. And vice versa.

We are not persuaded by Chipotle's arguments to the contrary. Chipotle characterizes the accusation as merely a "'vague' charge[] of discrimination or harassment" that did not amount to protected activity. According to Chipotle, Crawford needed to simultaneously and explicitly link the discrimination to a protected category. Chipotle says that it would have been sufficient if, for example, Crawford had said that Torres was "discriminating against Shelton on the basis of race," but the mere charge that Torres was "discriminating against Shelton" was not enough. We disagree. "To come within the protection of Title VII," Crawford need only "establish that [s]he challenged an employment practice that [s]he reasonably believed was unlawful." *Yazdian*, 793 F.3d at 645. It is true that merely lobbing a "'vague charge of discrimination'" at an employer will not suffice. *Id.* at 645 (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). At the same time, an accusation need not "be lodged with absolute formality, clarity, or precision." *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013).

Here, when Crawford's statement is properly taken in context and in the light most favorable to her, Crawford's claim survives summary judgment. We cannot say, as a matter of law, that making an accusation of "discrimination" in these circumstances is insufficient just because Crawford did not link the discrimination to the victim's race in the same breath. In similar fashion, we have said that a female accountant's "threat to sue over the pay disparity" between herself and a male coworker "was clear enough to qualify as protected activity," even though she "did not utter the magic words 'sex discrimination.'" *Mumm v. Charter Twp. of Superior*, 727 F. App'x 110, 113 (6th Cir. 2018). That was true because of the factual backdrop against which the accountant stated her objection, and it is also true here.

Conversely, we have said that charges of "discrimination" were too vague to be protected activity when the accusation came out of left field or when the employee did not "specifically allege[] . . . employment practices" that were discriminatory. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591–92 (6th Cir. 2007); *see also Land v. S. States Coop., Inc.*, 740 F. App'x 845, 850 (6th Cir. 2018) (holding that written complaint was not protected activity because "the allegations of discrimination contained in [the] lengthy letters were vague, at best," and "[t]he record contains no evidence that Land alleged specific discriminatory employment practices in his discussions with decision-makers or his letters to Southern States"); *Samuels v. Corr. Med. Servs., Inc.*, 591 F. App'x 475, 485 (6th Cir. 2015) (holding that evidence was insufficient to show protected activity where the written complaint specifically addressed past issues with coworkers and general frustration, but "only vaguely assert[ed] that Samuels was being harassed, discriminated against and [suffered] some retaliation" (quotation marks omitted)); *Booker*, 879 F.2d at 1313 ("An employee may not invoke the protections of [Title VII] by making a vague charge of discrimination.").

Here, the accusation did not come out of left field—Crawford had previously approached Torres with complaints of racial favoritism—and she specifically identified the failure to pay Shelton's back pay as the discriminatory practice. That Torres immediately responded to Crawford's claim of "discrimination" with a claim that she was instead (or also) guilty of race discrimination ("the only reason she was defending . . . Shelton was because [she is black]") also adds context. The governing principle from our caselaw is not that magic words must be intoned but that the language used be enough, in a specific factual context, to convey the accusation and its basis. In this particular context, accusing Torres of "discriminating against" and "harassing" Shelton is just enough to get past summary judgment.

B.

Chipotle does not contest that termination is a "materially adverse" action in the retaliation context. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006). Thus, the only remaining prima facie element is the fourth: a causal connection between the protected activity and the adverse action. Crawford must have enough evidence for a jury to conclude that "but for" her opposition, she would not have been terminated. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013); *EEOC v. Ford Motor Co.*, 782 F.3d 753, 770 (6th Cir. 2015).

Crawford says that five portions of the record support a causation inference: (1) she "was dismissed less than two weeks after she told Torres to stop discriminating against Shelton"; (2) Torres' behavior toward Crawford changed after the confrontation; (3) the alleged complaints against Crawford, even if true, became an issue only after Crawford accused Torres of discrimination; (4) Amaya was more favorably treated; and (5) Crawford never received a purported disciplinary document[4] on which Chipotle relied during the deposition, nor did she ever participate in the discussion supposedly described in that document. This evidence, while lean, is just enough.

Though Crawford asserts that the timing of her termination (less than two weeks after the protected activity) raises an inference of causation, we have said that temporal proximity alone is generally insufficient to survive summary judgment. *See Vereecke v. Huron Valley Sch. Dist.*,

---

[4] During discovery, Chipotle produced a disciplinary record purporting to memorialize an oral warning that an unspecified manager had given to Crawford on March 12, 2014 (five days before her termination). The manager wrote that he told Crawford that her "job is not to run shifts and boss people around," but rather "to creat[e] extraordin[ary] cultures," and to "elevate our team each day." According to the document, Crawford "agreed that her performance ha[d] not be[en] the best over the past few weeks and that she underst[ood] that . . . she w[ould] be remove[d] from the team" if she failed to improve. Crawford testified that she had never seen the disciplinary document before her deposition and had never had the conversation described therein. We must take Crawford's version as true in reviewing summary judgment.

609 F.3d 392, 401 (6th Cir. 2010). Instead, the plaintiff usually must offer evidence beyond mere temporal proximity. Here, Crawford's additional evidence is just sufficient to supplement the temporal proximity. For example, Torres supported Crawford's career advancement until she accused him of discrimination, after which he called her "an ass." *See Adamov v. U.S. Bank Nat'l Ass'n*, 681 F. App'x 473, 479 (6th Cir. 2017) ("[I]ncreased scrutiny of Adamov's behavior by those who were aware of Adamov's complaints also supports an inference of retaliatory conduct."). Furthermore, Crawford's testimony that she never received the disciplinary document or participated in the conversation referenced therein is, if believed, also circumstantial evidence of causation. A jury could reasonably infer that a purportedly false disciplinary document was evidence of intent to hide impermissible motivations.

Drawing all inferences in Crawford's favor, as we must, Chipotle is not entitled to summary judgment on the causation element. Crawford has therefore made out all four elements of her prima facie retaliation case.

C.

Crawford agrees that terminating a supervisor because her crew members did not want to work with her would generally be "legitimate" and "nondiscriminatory." *Wright*, 455 F.3d at 706. So the burden moves back to Crawford to show that Chipotle's proffered reason was merely an effort to mask retaliation. *Id.* at 706–07. "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Montell*, 757 F.3d at 508 (quoting *Chen*, 580 F.3d at 400 n.4). One way to do this is to show that the stated reason was not actually true. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016).

Drawing all inferences in Crawford's favor, she "has produced evidence from which a jury could reasonably doubt the employer's explanation." *Montell*, 757 F.3d at 508 (quoting *Chen*, 580 F.3d at 400 n.4). Crawford testified that she would have been surprised if any crew members disliked working with her. In fact, she reported that both Torres and another Chipotle manager had pressured her to "toughen up more," because she "was kind of a pushover" with the crew. But despite being "kind of a pushover," there is evidence that she was a good supervisor overall. She had been promoted twice in two years and was expecting a third promotion, this time to a salaried position. Although Crawford had initially struggled to win over the crew members, she made successful efforts to improve those relationships. She even said that the crew members were her "family," and reported that "a majority of the crew felt more comfortable" coming to her with complaints than to Torres or Amaya. And when she told crew members about her termination, they asked, "well, who doesn't like working with you?"

Additionally, when Torres terminated Crawford, he was "very vague about" his reason for doing so, refused to give Crawford specific names of disgruntled employees, and drove away immediately after firing her. Crawford asked him why she had not previously heard about the crew's dissatisfaction with her; Torres told her that it had not "really become a problem until Friday," without explaining why Friday would have been an inflection point. And Crawford testified that nothing *had* happened on Friday that would justify such a statement. *Cf. Yazdian*, 793 F.3d at 653 ("A jury could reasonably conclude that Yazdian's behavior was not so bad as to warrant termination . . . and his behavior became a problem only after Yazdian complained that Sweatt was creating a hostile work environment."). Furthermore, Crawford's testimony that she never received the disciplinary document or participated in the conversation referenced therein is, if believed, also circumstantial evidence that she did not actually have issues working with her

subordinates. A jury could reasonably infer that a purportedly false disciplinary document was evidence of intent to justify the termination after the fact. All of this evidence casts doubt on whether Torres was being forthcoming with his real reasons for terminating Crawford.

Thus, drawing all reasonable inferences in Crawford's favor, and "disregard[ing] all evidence favorable to [Chipotle] that the jury is not required to believe," *Reeves*, 530 U.S. at 151, Crawford has presented enough evidence for a jury to infer that Chipotle's stated reason for the termination had no basis in fact. The district court, therefore, erred in keeping Crawford's retaliation claims from the jury.

IV.

Turning to Crawford's discrimination claims, however, we agree with the district court that Chipotle is entitled to summary judgment. To get past summary judgment, Crawford must make a prima facie showing that she (1) was a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by a person outside the protected class or was treated less favorably than a similarly situated person who was not a member of the protected class. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).[5] The dispute here centers on the fourth element—whether Crawford has identified a similarly-situated person who was treated more favorably than she was.

"[T]he plaintiff and the employee with whom the plaintiff seeks to compare herself must be similar in 'all relevant aspects,'" including their alleged misconduct. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012). Crawford asserts that Amaya, the Hispanic assistant manager, was similarly situated but treated more favorably despite his wrongdoing.

---

[5] As with the retaliation claims, Ohio discrimination law follows federal law, and so the federal discrimination analysis applies equally to Crawford's state claims. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131–32 (Ohio 1981).

According to Crawford, Amaya "admitted to altering [Shelton's] time records," but Torres never disciplined him. Chipotle concedes that Amaya's job responsibilities could be considered comparable to Crawford's but denies that Amaya's alleged misconduct was similar to Crawford's. Crawford concedes that she and Amaya did not engage in "identical conduct," but maintains nevertheless that "jurors could find Amaya's purposeful falsification of Shelton's time record" to be as or more serious than Crawford's allegedly poor relationship with her crew.

Amaya is not, however, an appropriate comparator. Where employees "engaged in different conduct, and the differences in their conduct are relevant," they are not similarly situated for employment discrimination purposes. *Wright*, 455 F.3d at 710. Our caselaw demands a closer resemblance to satisfy the 'similarly situated' requirement than Crawford has shown here. For example, we have said that using profanity and making verbal threats, although related at first glance, do not constitute similar misconduct for discrimination purposes. *Collins v. Memphis Goodwill Indus., Inc.*, 489 F. App'x 901, 909 (6th Cir. 2012). Likewise, there is too much daylight between "workplace horseplay" and premeditated assault to constitute similar misconduct. *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 601 (6th Cir. 2001); *see also Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 41 (6th Cir. 2009) (holding that misappropriation of funds and improperly maintaining liquor bottles at a restaurant bar were not sufficiently similar); *EEOC v. PVNF, LLC*, 487 F.3d 790, 801 (10th Cir. 2007) (holding that two employees were not similarly situated because, although they were both often late to work, one employee's tardiness affected her productivity and the other employee's did not). True, the plaintiff's and comparator's actions need not be identical, *see Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (stating that there need not be an "exact correlation"), but the "conduct must be similar in kind and severity," *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012).

As a matter of law, Crawford's alleged misconduct is not "similar in kind and severity" to Amaya's. Altering timesheets is fundamentally different from generating workplace conflicts. *Cf. Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (holding that an employee who had poor legal writing abilities was not similarly situated to the plaintiff, who was terminated because she had "difficulty getting along with others"). A reasonable jury could not find that Amaya's actions were "substantially similar" to Crawford's in "all relevant aspects." *White v. Duke Energy-Ky., Inc.*, 603 F. App'x 442, 448–50 (6th Cir. 2015). And because Crawford has failed to make out a prima facie case of race discrimination, summary judgment for Chipotle was proper.

\* \* \*

For the foregoing reasons, we AFFIRM summary judgment on the discrimination claims, REVERSE on the retaliation claims, and REMAND the retaliation claims for trial.